UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PRIMARY PRODUCTIONS LLC, on behalf of itself and all others similarly situated

          *Plaintiff*,

  v.

APPLE INC.

          *Defendant*.

Civil Action No. 21-cv-00137-JDL

## APPLE INC.'S MOTION TO TRANSFER VENUE

Defendant Apple Inc. ("Apple") respectfully moves to transfer this case to the U.S. District Court for the Northern District of California for two independent reasons.

*First*, Primary Productions LLC ("Plaintiff") is bound by the mandatory forum-selection clause within the Apple Developer Program License Agreement (the "DPLA"). That clause—which is given controlling weight under settled Supreme Court precedent—requires lawsuits like Plaintiff's, challenging discretionary decisions by Apple regarding distribution of apps through the App Store, to be brought in the Northern District of California. Plaintiff's counsel is already aware of this fact. *See Coronavirus Reporter v. Apple Inc.*, 2021 WL 1946428, at *6 (D.N.H. May 14, 2021) (transferring another case brought by the same law firm under the DPLA).

*Second*, even if the forum-selection clause did not apply, transfer is warranted under 28 U.S.C. § 1404(a). Virtually all operative events occurred, the likely witnesses live and work, all relevant documents are located, and Apple is headquartered in the Northern District of California. In contrast, the District of Maine lacks any nexus to Plaintiff's allegations. No parties or identified witnesses reside in Maine and no alleged events occurred here. This is a paradigmatic case for transfer.

1

## BACKGROUND

Apple released the iPhone in 2007, and in 2008 introduced the App Store, a platform for app developers to distribute iOS apps. Any person who wishes to use Apple's proprietary software and development tools must agree to the Apple Developer Agreement ("Developer Agreement") and the DPLA. Declaration of M. Rollins ("Decl.") ¶ 5. The Developer Agreement governs the relationship between a developer and Apple, *see* Ex. A, while the DPLA governs the distribution of apps created using Apple's proprietary tools and software, *see* Ex. B.[1]

Apple obtains developers' agreement to these contracts through knowing and voluntary online consent. Decl. ¶ 5. Developers review the Developer Agreement and the DPLA in an online portal. *Id.* Developers are instructed to read the agreements before agreeing to their terms. *Id.*; Exs. A, B. Each agreement also notifies developers that it is a "legal agreement between You and Apple." Exs. A, B. Developers must also abide by the App Store Review Guidelines (the "Guidelines"). Decl. ¶ 11; Ex. C. The Guidelines set forth the standards Apple applies when reviewing apps for distribution on the App Store, a process known as "App Review." Decl. ¶¶ 11–12. The teams responsible for App Review and setting, updating, and revising the Guidelines are based within the Northern District of California. *Id.* ¶ 12. No Apple employees who perform App Review or set App Store policy live or work in Maine. *Id.* ¶¶ 13–14.

Plaintiff allegedly is an "edutainment media production company" incorporated in New Jersey. Compl. ¶ 14. Plaintiff alleges that "multiple officers" reside in Maine, but does not identify them further, describe their roles, or allege that they perform any work related to these claims from Maine. *Id.* ¶¶ 12, 14. On May 17, 2021, Plaintiff filed this suit alleging that its Ukraine-based development team had completed an app in mid-2018 relating to cryptocurrency and blockchain

---

[1] All exhibit citations herein are to the Rollins Declaration.

technology. *Id.* at 1, ¶¶ 37, 40. Upon completion of the app, which is not further identified in the Complaint, Plaintiff allegedly attempted to submit the app for distribution through the App Store by "contract[ing] through third-parties," who also are not identified in the Complaint. *Id.* ¶ 182. Apple allegedly rejected the app under a general policy against blockchain mining apps, as well as because Plaintiff's app was "frivolous" and "caused risk-gambling." *Id.* ¶¶ 38–39.

While Plaintiff alleges that it has not signed the Developer Agreement or DPLA, *see* Compl. ¶ 182, an app can be submitted for App Review only by a signatory to both agreements, Decl. ¶ 8; Exs. A, B. Plaintiff's allegation that its (unidentified) app was submitted for App Review necessarily means that either Plaintiff or a person or entity acting under Plaintiff's direction and control signed both agreements. Apple asked Plaintiff's counsel for the name of the app and the submitter, but as of the date of this filing Plaintiff has provided no answer. Decl. ¶ 7.

## LEGAL STANDARD

This Court may transfer "any civil action to any other district" if the action "might have been brought" there, or the parties have consented to venue there, and transfer will enhance "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The transferor court possesses "wide discretion" in deciding motions to transfer. *Prime Steakhouse v. Mowi ASA*, 2020 WL 1443759, at *10 (D. Me. Mar. 25, 2020).

Where the parties and closely related nonparties have agreed to a valid contract containing a forum-selection clause, a three-step transfer analysis applies. The court first must determine if the clause is mandatory—meaning that the parties agreed to litigate *exclusively* in a given forum—or permissive. *See Claudio-De León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014). If it is mandatory, the court then assesses whether the clause covers the plaintiff's claims, applying principles of contract interpretation. *See Huffington v. T.C. Grp., LLC*, 637 F.3d

3

18, 21 (1st Cir. 2011). If the clause covers the alleged claims, it is "prima facie valid"; and the court asks whether the plaintiff has made a "strong showing" that the clause "should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972); *see also Claudio-De León*, 775 F.3d at 48. When a mandatory forum-selection clause applies, it is "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (quotation omitted). In cases governed by a mandatory forum-selection clause, courts may not consider private interests relevant to transfer, including the plaintiff's choice of forum, and public-interest factors "rarely defeat a transfer motion." *See id.* at 63–64.

If a court concludes that a forum-selection clause is permissive or does not control, then it weighs private- and public-interest factors under § 1404(a) to evaluate whether transfer would serve "the convenience of the parties and witnesses," "the interest of justice," and "judicial economy." *Prime Steakhouse*, 2020 WL 1443759, at *9 (identifying factors).

## ARGUMENT

**I.       This Action Should Be Transferred Pursuant to the DPLA's Mandatory Forum-Selection Clause.**

**A.      Plaintiff is bound by the DPLA's forum-selection clause.**

Plaintiff allegedly contracted with a collaborator (who Plaintiff thus far refuses to disclose) to have its app submitted for App Review. Compl. ¶ 182. It is impossible to submit an app for App Review without having signed the DPLA. Decl. ¶ 8. The DPLA instructs developers to "carefully" read its terms and conditions, which include a mandatory forum-selection clause. *See* Ex. B at 1, § 14.10. Whatever person or entity did submit Plaintiff's app, therefore, must have entered into, and is bound by, the DPLA, a "valid contract containing an enforceable forum selection clause." *Coronavirus Reporter*, 2021 WL 1946428, at *4. The DPLA is thus valid and Plaintiff has identified no basis to set it aside. *Cf. id.* at *2–3.

4

Plaintiff is bound by the forum-selection clause in the DPLA executed by the person or entity that submitted Plaintiff's app. "[A] non-party to a forum selection clause may be bound if it is closely related to the dispute such that it becomes foreseeable that it will be bound." *Europa Eye Wear Corp. v. Kaizen Advisors, LLC*, 390 F. Supp. 3d 228, 231 (D. Mass. 2019) (quotation marks omitted). For instance, a nonparty is closely related when its interests are "directly related to, if not predicated upon the signatory party's interest or conduct." *Id.* (quoting *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 258 (E.D.N.Y. 2013)). "Were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against [nonparties], such clauses often could easily be evaded," thereby "undermin[ing] the contribution that [they] have been praised for making to certainty in commercial transactions." *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 441–42 (7th Cir. 2012).

The "closely related" standard is easily met here. By Plaintiff's own admission, it attempted to evade the strictures of the DPLA by "contract[ing] through third-parties to attempt to access the App Store." Compl. ¶ 182. Plaintiff's claims are thus both directly related to and predicated upon the actions of that alleged third party, because Plaintiff, as a non-signatory to the DPLA, would have had no other way to submit an app for App Review. Decl. ¶ 8; *cf.* Order, ECF No. 39, at 8, *Coronavirus Reporter v. Apple Inc.*, No. 21-cv-47 (D.N.H. July 1, 2021) (noting that conduct underlying any claims arising from App Store rejection "would not have occurred but for the [DPLA] and the relationship it created"). Plaintiff cannot bypass the DPLA or its requirements through use of a stalking horse.

Likewise, because Plaintiff was allegedly in privity with the submitter by contract, it was "foreseeable" that the clause—which indisputably applies to all disputes under the DPLA—would be enforced against Plaintiff. Indeed, the fact that enforcement of the clause was "foreseeable

5

prior to suit," *Recurrent Cap. Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 307 (S.D.N.Y. 2012), is made clear by Plaintiff's Complaint, which alleges that Plaintiff "refuses to sign" the DPLA's "venue" and "forum waiver" provisions. Compl. ¶¶ 12, 14.

### B. The DPLA's forum-selection clause is mandatory.

The DPLA's forum-selection clause provides that "[a]ny litigation . . . between You and Apple arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple *will take place in the Northern District of California*, and You and Apple hereby consent to the personal jurisdiction of and *exclusive venue* in the state and federal courts within that District." Ex. B § 14.10 (emphases added). This clause is "plainly mandatory" because it "contain[s] clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." *Autoridad de Energía Eléctrica de Puerto Rico* v. *Vitol S.A.*, 859 F.3d 140, 145–46 (1st Cir. 2017) (quoting *Claudio-De León*, 775 F.3d at 46); *see Coronavirus Reporter*, 2021 WL 1946428, at *4 (concluding that the DPLA's forum-selection clause "is mandatory").

### C. The mandatory forum-selection clause covers Plaintiff's claims.

Plaintiff's claims are governed by the mandatory forum-selection clause because they "aris[e] out of" and "relat[e] to" the DPLA and Plaintiff's "relationship with Apple." Ex. B § 14.10 "The First Circuit has interpreted the term 'relating to' in forum selection clauses to be very broad." *Bagg v. HighBeam Rsch., Inc.*, 862 F. Supp. 2d 41, 45 (D. Mass. 2012) (citing *Huffington*, 637 F.3d at 22). At bottom, Plaintiff's statutory claims rest on Plaintiff's (implausible) allegations that Apple did not approve Plaintiff's app because Apple thought it would compete with and undermine the Apple Arcade marketplace. *See, e.g.*, Compl. ¶¶ 8–9, 14, 37–39, 42, 45, 48, 101, 175–76, 189. The DPLA squarely governs this challenged conduct, namely, Apple's "[s]election" of apps for "distribution via the App Store" in its "sole discretion." Ex. B § 6.8.

As for its contract claims, Plaintiff alleges that "Apple breached the fundamental intent" and "legal portions" in "its own Developer Agreement," and violated the covenant of good faith and fair dealing, when it declined to approve Plaintiff's app. Compl. ¶¶ 212, 217. These claims relate directly to the language and intent of the DPLA and are subject to its forum-selection clause.[2]

### D. Plaintiff cannot overcome the strong presumption in favor of enforceability.

Because the DPLA's forum-selection clause is mandatory and governs the claims here, it is presumed valid. *Claudio-De León*, 775 F.3d at 48. Plaintiff cannot make the "strong showing" required to set it aside. *See id.* at 48–49 (citing *Bremen*, 407 U.S. at 10, 15).

Plaintiff suggests that the forum-selection clause is invalid because it is part of an allegedly "monopolistic contract." Compl. ¶ 12 (p. 7). Plaintiff is wrong. The clause is not anticompetitive, but in any event, courts routinely enforce such clauses, *see, e.g.*, *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 389 (1st Cir. 2001), even those in allegedly anticompetitive contracts, *see, e.g.*, *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 776–78 (N.D. Cal. 2015). Only if a mandatory forum-selection clause was procured by fraud or is unconscionable will it be set aside, *see Huffington*, 637 F.3d at 23–24, and no such allegations have been or could be made here. If Plaintiff means instead that the clause should be set aside just because Plaintiff lacked an opportunity to bargain with Apple over its terms, the First Circuit has rejected that proposition too. *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 18–19 (1st Cir. 2009). The clause is enforceable.

### E. Public-interest factors favor transfer to the Northern District of California.

Because the forum-selection clause is mandatory, this Court may not consider any private-interest factors relevant to transfer. *See Atl. Marine*, 571 U.S. at 64. Rather, Plaintiff must show

---

[2] Read in context, Plaintiff's reference to the "Developer Agreement" appears to refer to the DPLA, which governs app distribution on the App Store. Regardless, the Developer Agreement also includes a mandatory forum-selection clause. *See* Ex. A § 17.

7

that the "public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. Plaintiff cannot do so, because the public-interest factors overwhelmingly *favor* transfer.

Start with local interest. Plaintiff's claims lack any nexus to Maine. Plaintiff, a New Jersey company, alleges no anticompetitive effects in Maine or any other injuries to Maine residents. Instead, Plaintiff's allegations relate either to Apple's App Review process—no part of which occurs in Maine—or grandiose theories about Apple's purported role as a gatekeeper to "the global internet backbone." Compl. ¶ 65. By contrast, the Northern District of California has a strong nexus to and interest in the litigation. Apple is headquartered there, where thousands of its employees reside. Decl. ¶ 3. A number of those employees are likely to be witnesses in this case. *Id.* ¶¶ 12–13. The Northern District of California also has a "greater interest in resolving [Plaintiff's claims]" since App Review, and other alleged conduct, "occurred in that state." *Bath Iron Works Corp. v. Congoleum Corp.*, 2019 WL 2110499, at *3 (D. Me. May 14, 2019).

The Northern District of California's familiarity with the Sherman Act, especially as applied to App Store cases, also heavily favors transfer. A number of other antitrust cases challenging Apple's App Store policies are pending in that district. *See*, *e.g.*, *Pistacchio v. Apple Inc.*, No. 20-cv-7034 (N.D. Cal.); *Cameron v. Apple Inc.*, No. 19-cv-3074 (N.D. Cal.); *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714 (N.D. Cal.). Recently, in May 2021, the Honorable Yvonne Gonzalez Rogers presided over a three-week trial involving antitrust claims brought by an app developer. *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640 (N.D. Cal.). Other cases brought by app developers have been designated as related, and some have been consolidated "to assure consistent rulings . . . and to avoid unnecessary duplication of effort." Order at 2, *Cameron* (N.D. Cal. Nov. 5, 2019). These cases "concern novel and innovative business practices in the technology market that have not otherwise been the subject of antitrust litigation." *Epic Games,*

*Inc.* v. *Apple Inc.*, 493 F.Supp.3d 817, 832 (N.D. Cal. 2020). The California court's deep experience with the Sherman Act in this context, and the "possibilities of consolidation" or other coordination, favor transfer. *Cianbro Corp.* v. *Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987).

## II. The Northern District of California Is the More Convenient Venue

Even if Plaintiff were not bound by the forum-selection clause (which it is), transfer is also proper under a straightforward § 1404(a) analysis. As an initial matter, the case "might have been brought" in the Northern District of California, 28 U.S.C. § 1404(a)—Apple is headquartered in Cupertino, CA, located within that district, and a substantial part of the alleged events took place there. Decl. ¶¶ 3–4, 12–14; *see* 28 U.S.C. § 1391(b)(1)–(2). The existence of the DPLA's forum-selection clause also favors transfer. *See OsComp Sys., Inc. v. Bakken Express, LLC*, 930 F. Supp. 2d 261, 275 (D. Mass. 2013). And, as discussed, the public-interest factors heavily favor transfer.

The private-interest factors also strongly favor transfer. The "most important" factor is convenience of the witnesses, and here, the witnesses will likely be Apple employees who live and work in the Northern District of California, Decl. ¶¶ 12–14; "[f]or obvious reasons, it would be more convenient" for those witnesses "if the case was tried in [California] rather than Maine," *Multibene Ingredients Oy Ltd. v. Sturm Foods Inc.*, 658 F. Supp. 2d 250, 253 (D. Me. 2009). No likely Apple witness resides or works in Maine. Decl. ¶¶ 12–16. Plaintiff does not allege that its officers who reside in Maine will be witnesses, and even if they were, the question is which venue would be convenient for a "majority" of witnesses. *Id.* That is the Northern District of California.

Likewise, all of the operative events here—App Review and related policy decisions—occurred in the Northern District of California. Plaintiff has not alleged a single event occurring in Maine. "[W]here there is no material connection between [a] chosen forum and operative facts, interests of justice require transfer." *Ahmed v. Mohammad*, 2008 WL 4457866, at *2 (D. Me. Oct.

9

1, 2008) (citing *Wechsler v. Macke Int'l Trade, Inc.*, 1999 WL 1261251 (S.D.N.Y. Dec. 27, 1999)). For the same reason, likely sources of proof relating to App Review are located "at [Apple's] corporate headquarters" in the Northern District of California. *Id.*

The convenience of the parties, too, favors transfer: Apple resides in the Northern District of California, and any presumption in favor of Plaintiff's chosen forum is significantly weakened by the fact that Plaintiff is not a Maine corporation. *See Brown v. Elanes N.H. Holdings, LLC*, 166 F. Supp. 3d 104, 108 (D. Mass. 2015). The alleged Maine residence of Plaintiff's officers is irrelevant to this factor. *See Koos, Inc. v. Performance Indus., Inc.*, 747 F. Supp. 487, 490 (N.D. Ill. 1990). Nor is it relevant, as Plaintiff appears to suggest, that counsel is a "Maine-native," Compl. ¶ 1, because "[t]he convenience of the plaintiff's lawyers is not a factor" in the § 1404(a) analysis, *Henderson v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n*, 2011 WL 2194439, at *2 (D. Me. June 6, 2011).

Finally, similar efficiency concerns that motivated the relation, consolidation, and joint discovery orders in the Northern District of California favor transfer here. *See* Order Granting Stip. Regarding Coordination of Disc., *In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714 (N.D. Cal. Jan. 6, 2020). Because this case could involve some of the same witnesses and documents as those cases, "if this Court does not transfer the case," multiple "cases litigating identical issues will occur simultaneously, wasting the parties' and the judiciary's resources." *Acadia Ins. Co. v. Lakeshore Sail Charters, LLC*, 2014 WL 6986152, at *3 (D. Me. Dec. 10, 2014). "[G]reat weight should be given to this efficiency consideration." *Id.* at *2.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court transfer this case to the Northern District of California.

Dated: July 12, 2021

                                    Respectfully submitted,

                                    Defendant, APPLE INC.
                                    By and through its attorneys,

| */s/ Peter J. Brann* | */s/ Mark A. Perry* |
|---|---|
| Peter J. Brann | Mark A. Perry, *pro hac vice* |
| Stacy O. Stitham | Rachel S. Brass, *pro hac vice* |
| BRANN & ISAACSON | Zachary B. Copeland, *pro hac vice* |
| 184 Main Street, 4th Floor | GIBSON, DUNN & CRUTCHER LLP |
| Lewiston, ME 04243-3070 | 1050 Connecticut Avenue, N.W. |
| Tel.: (207) 786-3566 | Washington, DC 20036-5306 |
| PBrann@brannlaw.com | Tel.: (202) 955-8500 |
| SStitham@brannlaw.com | MPerry@gibsondunn.com |
| | RBrass@gibsondunn.com |
| | ZCopeland@gibsondunn.com |