UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PRIMARY PRODUCTIONS LLC, on behalf of itself and all others similarly situated<br><br>*Plaintiff*,<br><br>v.<br><br>APPLE INC.<br><br>*Defendant*. | Civil Action No. 21-cv-00137-JDL |

### DECLARATION OF MARK ROLLINS IN SUPPORT OF APPLE INC.'S MOTION TO TRANSFER VENUE

I, Mark Rollins, declare as follows:

1. I am over 18 years of age and competent to make this declaration. I am employed as a Finance Manager at Apple Inc. ("Apple"), and my primary place of work is Cupertino, California. I have been employed by Apple since 2019.

2. I provide this declaration in support of Apple's Motion to Transfer Venue to the Northern District of California in the above-captioned case. Unless otherwise indicated below, the statements made in this declaration are based on my personal knowledge, my review of corporate records maintained by Apple in the ordinary course of its business, and/or my discussions with Apple employees. If called to testify as a witness in this matter, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

3. Apple is a California corporation and was founded in 1976. Apple is a global business headquartered in Cupertino, California, which is in the Northern District of California. I understand that the Northern District of California includes the following counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, and Sonoma. Apple's management and primary research and development facilities are located in or near Cupertino, including surrounding cities such as Sunnyvale, all of which are located in the Northern District of California. The primary operation, marketing, sales, and finance decisions for Apple also occur in or near Cupertino. As of July 2021, Apple has more than 35,000 employees who work in or near its Cupertino headquarters.

4. I understand that Primary Productions LLC ("Plaintiff") filed the above-captioned lawsuit against Apple in the United States District Court for the District of Maine. I have reviewed the Complaint filed by Plaintiff on May 17, 2021. I understand that Plaintiff alleges that Apple violated Sections 1 and 2 of the Sherman Act, breached the Apple Developer Agreement ("Developer Agreement"), and breached the implied covenant of good faith and fair dealing by allegedly declining to approve Plaintiff's proposed iOS application ("app") for distribution through Apple's iOS App Store (the "App Store"). *See, e.g.*, Compl. ¶¶ 37–39 (allegations that Apple declined to approve Plaintiff's app); 180, 192 (Section 1 claims); 133, 144, 157, 170 (Section 2 claims); 212, 217–18, 220 (contract and implied covenant claims). I also understand that Plaintiff alleges that the Developer Agreement and the App Store Review Guidelines "unreasonably restrain competition." Compl. ¶ 181.

5. A third-party developer who wishes to distribute apps on Apple's App Store must agree to the Developer Agreement and the Apple Developer Program License Agreement ("License Agreement"). Developers review each agreement through an online portal within their developer account and execute the agreements by clicking a button within the portal

indicating that they agree to the terms of both agreements. Apple instructs developers, in bold and capitalized letters, to read each agreement before executing it.

6. Plaintiff has not signed the Developer Agreement or the License Agreement. I understand, based on Plaintiff's Complaint, that Plaintiff contracted with third-parties in order to submit its app for review by Apple. *See* Compl. ¶ 182.

7. I understand that Apple's outside counsel has requested from Plaintiff's counsel the name of Plaintiff's app or the identity of the third-party submitter, but Plaintiff's counsel has, as of the date of this declaration, provided no answer.

8. No entity can submit an app to the App Store for review without having first signed and agreed to the Developer Agreement and License Agreement. *See supra* ¶ 5. If Plaintiff's app was submitted for review, therefore, it could have been submitted only by an entity bound by the Developer Agreement and License Agreement.

9. Attached to this declaration is a true and correct copy of the Developer Agreement (Exhibit A), which was in effect as of June 2018, when Plaintiff's app allegedly was completed and submitted for review, *see* Compl. ¶¶ 8–9.

10. Attached to this declaration is a true and correct copy of the License Agreement (Exhibit B), which was in effect as of June 2018, when Plaintiff's app allegedly was completed and submitted for review, *see* Compl. ¶¶ 8–9.

11. The App Store Review Guidelines provide the rules and requirements relating to Apple's review of apps for possible publication on the App Store. A true and correct copy of the current App Store Review Guidelines is attached to this Declaration as Exhibit C.

12. As further set forth below, Apple employees responsible for setting the policy governing review of proposed iOS applications are based in the Northern District of California. None

of those employees are based in Maine. Employees responsible for reviewing iOS apps, communicating the rejection of such apps, and handling appeals from such rejection (generally, "App Review") also work primarily in the Northern District of California. I understand that working and electronic files related to App Review are generated primarily in the Northern District of California, and none are generated in Maine. These documents reside primarily on local computers located in California or on servers accessible in California only by Apple employees.

13. The head of the App Review team, which is responsible for reviewing apps submitted for inclusion in the App Store for conformity with the App Store Review Guidelines, works and resides within the Northern District of California. The App Review team comprises approximately 500 people. The head of the App Review team confirmed that Apple employees engaged in reviewing proposed iOS apps primarily live and work within the Northern District of California. To the best of his knowledge, neither the head of the App Review team nor any member of his team (1) has ever lived in Maine while working on App Review matters, (2) is currently located in Maine, or (3) works with any individuals located in Maine on App Review matters. The head of the App Review team has never traveled to Maine in connection with his work on App Review matters.

14. All members of the Executive Review Board ("ERB"), which is responsible for setting App Store policies and guidelines, are based within the Northern District of California.

15. I am knowledgeable about Apple's sales and financial information concerning Apple's products and services related to Plaintiff's allegations. My primary workplace is in the Northern District of California. The primary place of work for employees on my team is in the Northern District of California. Documents concerning sales and financial

information for these products and services reside on local computers and/or servers either located in or around the Northern District of California or accessible in that district. Neither I nor any employee on my team is located in Maine. I have never traveled to Maine in connection with my work on this team.

16. As of the date of this declaration, Apple operates more than 270 retail stores in the United States, more than 50 of which are in California, including 19 stores in the Northern District of California. Apple has one retail store in Maine. I am not aware of any retail employee in that retail store who was ever involved in the review of Plaintiff's iOS app, App Review more broadly, or in setting App Review policy. To the extent that any of Apple's relevant products are sold in Maine, they are and were sold nationwide, and are not offered in any manner or degree differently than they are offered elsewhere. Apple has one leased facility in Maine. Apple employees in this facility are not involved in the review of Plaintiff's iOS app, App Review more broadly, or in setting App Review policy.

17. I declare under penalty of perjury that the foregoing is true and correct. Executed on July 6, 2021, in Santa Clara, California.

_____
Mark Rollins