GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (SBN 212532)
 mperry@gibsondunn.com
RACHEL S. BRASS (SBN 219301)
 rbrass@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
 jkleinbrodt@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile:  (415) 374-8429

*Attorneys for Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIMARY PRODUCTIONS LLC, on behalf of itself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:21-CV-6841-JSC<br><br>**DEFENDANT APPLE INC.'S RULE 12 MOTION TO DISMISS AND MOTION TO STRIKE; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  October 14, 2021<br>Time:  9:00 a.m. PT<br>Place:  Courtroom E, 15th Floor<br><br>The Honorable Jacqueline Scott Corley |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 14, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, 450 Golden Gate Ave., San Francisco, Courtroom E, 15th Floor, Federal Courthouse, Defendant Apple Inc., through their undersigned counsel, will, and hereby do, move to dismiss and move to strike Plaintiff Primary Productions LLC's Amended Complaint.  This Motion is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Rachel S. Brass and exhibits thereto; the Proposed Order filed herewith; the pleadings and papers on file herein; and such other matters that may be presented to the Court at the hearing.

By:   */s/ Rachel S. Brass*
Rachel S. Brass

GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (SBN 212532)
  mperry@gibsondunn.com
RACHEL S. BRASS (SBN 219301)
  rbrass@gibsondunn.com
JULIAN W. KLEINBRODT (SBN 302085)
  jkleinbrodt@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile:  (415) 374-8429

*Attorneys for Apple Inc.*

Gibson, Dunn & Crutcher LLP

1

## STATEMENT OF ISSUES TO BE DECIDED

2

Whether the Amended Complaint should be dismissed, and two of the proposed classes should

3

be stricken, because:

4

    1.  Plaintiff lacks Article III standing (Counts I, II, and VI).

5

    2.  Plaintiff has failed to allege a relevant antitrust market (Counts I–VI), antitrust injury and

6

       standing (Counts I–VI), exclusionary conduct under Section 2 (Counts I, II, and IV), and/or

7

       concerted action under Section 1 (Count V).

8

    3.  Plaintiff has failed to allege the required elements of a Section 2 tying claim (Count VI) or

9

       Section 2 essential facilities claim (Count III).

10

    4.  Plaintiff has failed to state a claim for breach of contract or the covenant of good faith and

11

       fair dealing (Counts VII and VIII).

12

    5.   Plaintiff has failed to plead with sufficient particularity the required elements of a RICO

13

       claim (Count IX).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
Page

3      I. INTRODUCTION ................................................................................................................. 1

4      II. BACKGROUND ................................................................................................................ 2

5      III. LEGAL STANDARDS ..................................................................................................... 4

6      IV. ARGUMENT ..................................................................................................................... 4

7            A.      Plaintiff Lacks Article III Standing to Bring Many Claims in the FAC ..................... 4

8            B.      Plaintiff's Antitrust Claims Must Be Dismissed ........................................................ 6

9                    1.      Plaintiff Fails to Allege a Plausible Relevant Market (Counts I–VI) .............. 6

10                   2.      Plaintiff Fails to Allege Plausible Antitrust Injury (Counts I–VI) ................... 9

11                   3.      Plaintiff Fails to Allege Exclusionary Conduct (Counts I, II, and IV) ........... 10

12                   4.      Plaintiff Fails to Allege Concerted Action or Unlawful Agreement
                             (Count V) ........................................................................................................ 11

13
                     5.      Plaintiff Fails to Identify Two Distinct Tied Products (Count VI) ................. 12
14
                     6.      Plaintiff Fails to Allege Inability to Access an Essential Facility (Count
15                           III) ................................................................................................................... 13

16           C.      Plaintiff's Contract Claims Must Be Dismissed ....................................................... 14

17                   1.      Plaintiff Fails to Plead Breach of Any Contract (Count VII) ......................... 14

18                   2.      Plaintiff Fails to Plead Breach of an Implied Covenant (Count VIII) ........... 15

19           D.      Plaintiff's RICO Claim Must Be Dismissed (Count IX) ........................................... 16

20                   1.      Plaintiff Has Not Pleaded a Claim with Particularity under Rule 9(b) .......... 16

21                   2.      Plaintiff Has Failed to Allege That Apple Committed Any Predicate
                             Acts ................................................................................................................. 17

22
                     3.      Plaintiff Has Failed to Allege a Distinct Enterprise ...................................... 18
23
      V. CONCLUSION .................................................................................................................. 19

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-6841-JSC

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016)..............................................................................11, 12, 13

*Agena v. Cleaver-Brooks, Inc.*,
  2019 WL 11248590 (D. Haw. Oct. 31, 2019).....................................................................16

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  361 F. Supp. 3d 324 (E.D.N.Y. 2019) .................................................................................8

*Am. Needle, Inc. v. NFL*,
  560 U.S. 183 (2010)...........................................................................................................11

*Anago Inc. v. Tecnol Med. Prods., Inc.*,
  792 F. Supp. 514 (N.D. Tex. 1992)......................................................................................9

*Apple Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...............................................................................8

*In re Apple Processor Litig.*,
  2019 WL 3533876 (N.D. Cal. Aug. 2, 2019).......................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................4, 12

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)..............................................................................................................9

*Baar v. Jaguar Land Rover N. Am., LLC*,
  295 F. Supp. 3d 460 (D.N.J. 2018) ....................................................................................11

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993)................................................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................4

*Blix Inc. v. Apple Inc.*,
  2020 WL 7027494 (D. Del. Nov. 30, 2020) ................................................................10, 13

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
  985 F. Supp. 2d 612 (S.D.N.Y. 2013).................................................................................10

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012)..............................................................................................9

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ..................................................................................................9

4

*Costco Wholesale Corp. v. Maleng*,
    522 F.3d 874 (9th Cir. 2008) ...................................................................................11

5

*Currier v. Town of Gilmanton*,
    2019 WL 3779580 (D.N.H. Aug. 12, 2019) ............................................................7

6

7

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ..................................................................................................4

8

9

*Dennis v. Husqvarna Forest & Garden Co.*,
    1994 WL 759187 (D.N.H. Dec. 27, 1994) ..............................................................12

10

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ...................................................................................16

11

12

*Donelson v. Ameriprise Fin. Servs., Inc.*,
    2021 WL 2231396 (8th Cir. June 3, 2021) ...............................................................6

13

14

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ..............................................................14, 15

15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...................................................................................17

16

17

*Edwards v. Oportun, Inc.*,
    193 F. Supp. 3d 1096 (N.D. Cal. 2016) ....................................................................6

18

19

*In re Facebook Privacy Litig.*,
    192 F. Supp. 3d 1053 (N.D. Cal. 2016) ....................................................................5

20

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993) ...................................................................................4

21

22

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ...............................................................................6, 10

23

24

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*,
    848 F.2d 976 (9th Cir. 1988) ...................................................................................13

25

*Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
    723 F.3d 1019 (9th Cir. 2013) ...................................................................................9

26

27

*Gottreich v. S.F. Inv. Corp.*,
    552 F.2d 866 (9th Cir. 1977) ...................................................................................16

28

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
(continued)

2

3

<u>Page(s)</u>

*Granfield v. NVIDIA Corp.*,
    2012 WL 2847575 (N.D. Cal. July 11, 2012)................................................................5

4

5

*Hamilton v. Greenwich Invs. XXVI, LLC*,
    126 Cal. Rptr. 3d 174 (Cal. Ct. App. 2011) .............................................................14, 15

6

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018)...................................................................................6, 7, 8

7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    485 F. Supp. 3d 1137 (N.D. Cal. 2020) ...................................................................6, 7, 14

8

9

*JamSports & Entm't, LLC v. Paradama Prods., Inc.*,
    336 F. Supp. 2d 824 (N.D. Ill. 2004) ........................................................................14

10

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) .........................................................................................................12

11

12

*Johnson v. Glock, Inc.*,
    2021 WL 428635 (N.D. Cal. Feb. 8, 2021)................................................................5

13

*Kelly v. United States*,
    140 S. Ct. 1565 (2020) ................................................................................................17

14

15

*Ledford v. Peoples*,
    657 F.3d 1222 (11th Cir. 2011)..................................................................................7

16

17

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005).......................................................................................16

18

*Lopez v. Dean Witter Reynolds, Inc.*,
    591 F. Supp. 581 (N.D. Cal. 1984) ............................................................................19

19

20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................................4

21

22

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011).....................................................................................4

23

24

*Med. Supply Chain, Inc. v. Neoforma, Inc.*,
    419 F. Supp. 2d 1316 (D. Kan. 2006) ........................................................................7

25

*Meland v. WEBER*,
    2 F.4th 838 (9th Cir. 2021).........................................................................................4

26

27

*Metro Servs. Grp. v. Travelers Cas. & Sur. Co.*,
    2021 WL 2633416 (N.D. Cal. June 25, 2021) ...........................................................16

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-6841-JSC

**TABLE OF AUTHORITIES**
(continued)

<u>Page(s)</u>

*MetroNet Servs. Corp. v. Qwest Corp.,*
 383 F.3d 1124 (9th Cir. 2004)..................................................................................................10

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,*
 924 F.2d 1484 (9th Cir. 1991)....................................................................................................7

*Muskegan Hotels, LLC v. Patel,*
 986 F.3d 692 (7th Cir. 2021)....................................................................................................19

*Newcal Indus., Inc. v. Ikon Office Sol.,*
 513 F.3d 1038 (9th Cir. 2008)....................................................................................................6

*In re NFL Sunday Ticket Antitrust Litig.,*
 933 F.3d 1136 (9th Cir. 2019)....................................................................................................9

*Novell, Inc. v. Microsoft Corp.,*
 731 F.3d 1064 (10th Cir. 2013)................................................................................................14

*Odom v. Microsoft Corp.,*
 486 F.3d 541 (9th Cir. 2007)....................................................................................................16

*Ohio v. Am. Express Co.,*
 138 S. Ct. 2274 (2018)................................................................................................................6

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.,*
 555 U.S. 438 (2009)............................................................................................................10, 11

*Pac. Recovery Sols. v. Cigna Behavioral Health, Inc.,*
 2021 WL 1176677 (N.D. Cal. Mar. 29, 2021).........................................................................17

*Pence v. Andrus,*
 586 F.2d 733 (9th Cir. 1978)......................................................................................................5

*Pistacchio v. Apple Inc.,*
 2021 WL 949422 (N.D. Cal. Mar. 11, 2021)....................................................................8, 9, 13

*Plastino v. Wells Fargo Bank,*
 873 F. Supp. 2d 1179 (N.D. Cal. 2012) ...................................................................................15

*Progressive W. Ins. Co. v. Superior Court,*
 37 Cal. Rptr. 3d 434 (Cal. Ct. App. 2005) ..............................................................................14

*Rae v. Union Bank,*
 725 F.2d 478 (9th Cir. 1984).....................................................................................................18

*Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.,*
 2020 WL 4194962 (S.D.N.Y. July 20, 2020) ..........................................................................11

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-6841-JSC

Gibson, Dunn & Crutcher LLP

1
2

# TABLE OF AUTHORITIES
(continued)

Page(s)

3

*Rick-Mik Enters., Inc. v. Equilon Enters., LLC*,
 532 F.3d 963 (9th Cir. 2008) ........................................................................................8, 12

4

5

*Sambreel Holdings LLC v. Facebook, Inc.*,
 906 F. Supp. 2d 1070 (S.D. Cal. 2012) ................................................................................11

6

*SaurikIT, LLC v. Apple Inc.*,
 No. 20-cv-08733 (N.D. Cal.) .................................................................................................8

7

8

*Schreiber Distr. Co. v. Serv-Well Furniture Co.*,
 806 F.2d 1393 (9th Cir. 1986) .............................................................................................18

9

*Sever v. Alaska Pulp Corp.*,
 978 F.2d 1529 (9th Cir. 1992) .............................................................................................18

10

11

*Somers v. Apple, Inc.*,
 729 F.3d 953 (9th Cir. 2013) .................................................................................................9

12

13

*Soundgarden v. UMG Recordings, Inc.*,
 2020 WL 1815855 (C.D. Cal. Apr. 6, 2020) .......................................................................15

14

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ...........................................................................................................5

15

16

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) .................................................................................................4

17

18

*Sumotext Corp. v. Zoove, Inc.*,
 2016 WL 6524409 (N.D. Cal. Nov. 3, 2016) ........................................................................7

19

20

*The Jeanery, Inc. v. James Jeans, Inc.*,
 849 F.2d 1148 (9th Cir. 1988) .......................................................................................11, 12

21

*Townshend v. Rockwell Int'l Corp.*,
 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ......................................................................10

22

23

*United States v. Brugnara*,
 856 F.3d 1198 (9th Cir. 2017) .............................................................................................18

24

*United States v. E.I. du Pont de Nemours & Co.*,
 351 U.S. 377 (1956) ...............................................................................................................6

25

26

*United States v. Miller*,
 953 F.3d 1095 (9th Cir. 2020) .............................................................................................17

27

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003) .................................................................................................2

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS
CASE NO. 3:21-CV-6841-JSC

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Walters*,
   997 F.2d 1219 (7th Cir. 1993) ............................................................................................17

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ...............................................................................................10, 13

*Wagh v. Metris Direct, Inc.*,
   2002 WL 257846 (N.D. Cal. 2002) .....................................................................................18

**STATUTES**

18 U.S.C. § 1961(5) .........................................................................................................18

18 U.S.C. § 1962(c) .........................................................................................................18

18 U.S.C. § 1964(c) .........................................................................................................15

**OTHER AUTHORITIES**

Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to
   Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.) .................................................14

**RULES**

Fed. R. Civ. P. 12(b)(1) .....................................................................................................4

Fed. R. Civ. P. 12(f)(2) ......................................................................................................4

Fed. R. Civ. P. 12(h)(3) .....................................................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# I. INTRODUCTION

With the launch of the iPhone in 2007, Apple Inc. ("Apple") created the revolutionary and unique iOS ecosystem.  Since then, Apple has focused on delivering to its consumers a safe, reliable, high-quality experience—including a highly curated App Store in which each app has gone through a rigorous process of review, including by Apple employees expert in app review.  Apple maintains App Store Review Guidelines, which address safety, privacy, performance, and reliability, and retains sole responsibility for ensuring Guideline compliance.

Plaintiff is unhappy that a cryptocurrency app it had some role in developing was allegedly rejected from the App Store, and asserts a series of sweeping antitrust, contract, and RICO claims against Apple.  But Apple has no obligation, under the antitrust laws or otherwise, to approve and distribute on its own platform apps that it has determined are inconsistent with Apple's Guidelines.  Plaintiff's claims are thus meritless, and this case should be dismissed.

*First*, Plaintiff lacks Article III standing to bring claims arising from alleged injuries it did not suffer.  Plaintiff's alleged injury-in-fact is that its app was not approved for distribution on the App Store.  But the vast majority of Plaintiff's alleged grievances—Apple's 30% commission and alleged "ranking suppression"—have nothing to do with that rejection.  Claims based on injuries Plaintiff did not suffer (including Counts I, II, and VI) must be dismissed.  Plaintiff's two proposed classes for developers "subject to a 30% sales commission" and those who "pa[id] Apple $99" for a developer license must similarly be struck.

*Second*, Plaintiff has plausibly pleaded neither relevant antitrust markets nor cognizable antitrust injuries to support any of its Sherman Act claims (Counts I–VI).  Plaintiff's Section 2 claims (Counts I, II, and IV) also must be rejected because Plaintiff has alleged no exclusionary conduct, only a refusal-to-deal theory that runs afoul of well-settled precedent.  And Plaintiff's Section 1 claim (Count V) fails for challenging only unilateral conduct, not concerted action.

*Third*, Plaintiff's claims for unlawful tying (Count VI) and denial of essential facilities (Count III), copied and pasted from *Epic Games v. Apple Inc.*, must be dismissed.  Plaintiff does not have standing to bring this tying claim, and in any event the First Amended Complaint ("FAC") does not sufficiently allege that the two allegedly tied products are distinct, an essential element of the claim.

As to the essential facilities claim, it fails because iOS is not an essential facility and no law requires Apple to deal with another party on that party's preferred terms.

*Fourth*, Plaintiff's contract claims (Counts VII and VIII) must be dismissed because the FAC does not identify any specific contract term in which Apple promised that developers like Plaintiff could distribute apps like Plaintiff's through the App Store.  On the contrary, the relevant contract makes clear that Apple retains sole discretion to approve, or disapprove, the distribution of apps developed using its proprietary software and tools.  The claim for breach of the implied covenant of good faith and fair dealing rehashes the contract claim and fails for the same reason.

*Fifth*, Plaintiff's RICO claim (Count IX) fails for several reasons.  Plaintiff's allegations come nowhere close to the particularity demanded by Federal Rule of Civil Procedure 9(b)—failing to identify the who, what, when, where, or how of even a single specific instance of Apple's alleged wire or mail fraud that Plaintiff wrongly asserts as the basis for its RICO claim.  Nor has Plaintiff sufficiently alleged facts establishing any of the elements of wire or mail fraud.

Because Plaintiff failed to cure the deficiencies in its original complaint in response to Apple's prior motion to dismiss, and added *another* meritless claim on top of the others, the FAC should be dismissed with prejudice.

## II. BACKGROUND

Apple introduced the App Store in 2008.  FAC ¶ 15.  App developers wishing to distribute apps on the App Store must enter into two agreements with Apple: the Developer Agreement and the Developer Program License Agreement ("DPLA").  Developers must also abide by the App Store Review Guidelines.[1]  The Developer Agreement governs the relationship between a developer and Apple, *see* Ex. A, while the DPLA governs the distribution of apps created using Apple's proprietary

---

[1]  Both agreements and the Guidelines, attached as Exhibits A, B, and C, are "central" to Plaintiff's claims, are incorporated by reference in the FAC, and may be considered on this motion.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").  Specifically, the FAC defines a putative class as all U.S. app developers who have signed the DPLA, FAC ¶ 140; and alleges that Apple enforces an unlawful tie "[t]hrough its Developer Agreement . . . and . . . Guidelines," *id.* ¶ 215.  California law governs both agreements.  *See* Ex. A § 17 (Developer Agreement); Ex. B § 14.10 (DPLA).  All exhibit citations herein are to the attached Declaration of Rachel S. Brass.

tools and software, *see* Ex. B.  As particularly relevant here, the DPLA provides that Apple may reject apps in its "sole discretion."  *Id.* § 6.9(b).  The Guidelines set out the standards applied when exercising that discretion to review and select apps for App Store distribution, a process known as "App Review."  *See generally* Ex. C.  In App Purchasing ("IAP"), discussed throughout the FAC, allows iOS users to purchase digital goods and services within apps.  *See id.* §§ 3.1.1, 3.1.3(e).

Plaintiff allegedly is an "edutainment media production company."  FAC ¶ 30.  According to the FAC, in mid-2018, after Plaintiff's Ukraine-based development team completed an app relating to cryptocurrency and blockchain technology, Plaintiff had the app submitted for App Review.  *Id.* ¶¶ 53–54, 56.  Plaintiff itself allegedly did not submit the app, as it alleges that it never signed the Developer Agreement or DPLA; instead, it "contracted through third-parties to attempt to access the App Store."  *Id.* ¶¶ 130, 205.  Apple allegedly rejected the app in accordance with a general policy against blockchain mining apps, as well as because the app was "frivolous" and "caused risk-gambling."  *Id.* ¶¶ 54–55, 255, 258.

On May 17, 2021, Plaintiff filed this putative class action on behalf of three proposed classes, Compl. at 1, and amended its complaint on August 2, 2021, FAC at 1.  The FAC asserts nine counts against Apple: Section 2 claims for monopolization and attempted monopolization (Counts I, II, and IV); an essential facility claim (Count III); a Section 1 unreasonable-restraint claim (Count V); a tying claim (Count VI); two contract claims (Counts VII and VIII); and a Racketeer Influenced Corrupt Organization Act ("RICO") claim (Count IX).  The three classes proposed by the FAC are: (1) "All U.S. developer-programmers of any Apple iOS application that was excluded through disallowance and/or ranking suppression, or non-participation in DPLA on Apple's iOS App Store, who signed, or did not sign, the DPLA"; (2) "All U.S. developers of any Apple iOS application or in-app product subject to a 30% sales commission [on] Apple's iOS App Store"; and (3) "U.S.-based iOS developers who were required to sign the DPLA and pay Apple $99 simply to access the 60% of the population that uses smartphone enhanced services (i.e. iOS) over the national internet backbone."  FAC ¶¶ 140–44.

### III. LEGAL STANDARDS

"The party invoking federal jurisdiction bears the burden of establishing the elements of standing." *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021). "[A] plaintiff must demonstrate standing for each claim." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Courts must dismiss claims over which they lack subject matter jurisdiction. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); Fed. R. Civ. P. 12(b)(1), (h)(3).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 558 (noting that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," and cautioning that "proceeding to antitrust discovery can be expensive").

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(2). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues" in order to "streamlin[e] the ultimate resolution of the action and focus[ ] . . . attention on the real issues in the case." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

### IV. ARGUMENT

A. **Plaintiff Lacks Article III Standing to Bring Many Claims in the FAC**

Plaintiff bears the burden of establishing Article III standing for its claims. *Meland*, 2 F.4th at 843. To establish standing, a plaintiff must allege (1) an injury-in-fact, (2) that is fairly traceable to defendant's conduct, and (3) redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A cognizable injury must be "concrete and particularized." *Id.* at 560. "[T]o bring a claim on behalf of

a class, the named plaintiff must have standing to bring the claim himself." *Johnson v. Glock, Inc.*, 2021 WL 428635, at \*6 (N.D. Cal. Feb. 8, 2021); *see also Pence v. Andrus*, 586 F.2d 733, 736–37 (9th Cir. 1978) ("[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016).  Because Plaintiff has failed to establish a cognizable injury traceable to the practices challenged in Counts I, II, and VI, at least those claims should be dismissed.

First, Plaintiff lacks standing to bring any claims related to IAP or Apple's alleged 30% commission on certain transactions.  The FAC contains no facts suggesting that Plaintiff intended to charge for its app, or offer any paid in-app content, that would have been subject to IAP or Apple's commission.  To the contrary, the FAC emphasizes that Plaintiff's app would have been "completely free to use."  FAC ¶ 13.  Likewise, Plaintiff's alleged injury—that its app was rejected from the App Store, *id.* ¶¶ 54–55—has nothing to do with IAP or a commission.

For similar reasons, Plaintiff lacks standing to assert claims arising from Apple's alleged "ranking suppression."  *Id.* ¶ 193.  Plaintiff's app was never approved for distribution through the App Store, *see id.* ¶ 55, so it could not have been subject to any alleged ranking suppression.  The developer of an app that Plaintiff supposedly "now represents, for litigation purposes," *id.* ¶ 30, and allegedly was subject to suppression, is not a party to this case and there are no allegations that Plaintiff owns, controls, or is formally affiliated with the app.  Nor can Plaintiff challenge Apple's $99 annual fee for developers, *id.* ¶ 7, which Plaintiff does not allege that it ever paid.

Because Plaintiff does not allege that it suffered any injury from IAP, Apple's 30% commission, or "ranking suppression," claims based on this alleged conduct must be dismissed.  *See In re Apple Processor Litig.*, 2019 WL 3533876, at \*6–8 (N.D. Cal. Aug. 2, 2019) (dismissing claims where plaintiff had not personally suffered injury alleged); *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1058 (N.D. Cal. 2016) (dismissing claims that relied on Facebook having disclosed information to third parties where named plaintiff's information was not disclosed to third party); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at \*6 (N.D. Cal. July 11, 2012) (dismissing for lack of standing claims for defects in "products not purchased").  That includes at least Counts I, II, and VI, which each

depend on the 30% commission, *see* FAC ¶¶ 160, 172; or IAP, *see, e.g.*, *id.* ¶¶ 155–56, 166–72, 215–23.  Count IV should also be dismissed to the extent it depends on "app ranking suppression," *see id.* ¶ 193.

Moreover, two of Plaintiff's proposed classes are defined in such a way as to include only developers who were subject to Apple's alleged commission or paid a $99 annual fee.  *See* FAC ¶¶ 142–44 (proposing classes of developers (1) "of any Apple iOS application or in-app product subject to a 30% sales commission" and (2) "who were required to sign the DPLA and pay Apple $99").  Because Plaintiff has alleged no facts suggesting it is a member of either class (explicitly stating that it "refused to sign the DPLA," FAC ¶ 205), each must be stricken as "immaterial" and "impertinent" to the legal issues here.  *See Donelson v. Ameriprise Fin. Servs., Inc.*, 2021 WL 2231396, at *7 (8th Cir. June 3, 2021) ("It is sensible to permit class allegations to be stricken at the pleading stage if it is apparent from the pleadings that the class cannot be certified."); *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016) (striking proposed class under Rule 12(f) where plaintiff was not a member of the putative class).

## B.    Plaintiff's Antitrust Claims Must Be Dismissed

### 1.    Plaintiff Fails to Allege a Plausible Relevant Market (Counts I–VI)

Defining the relevant market is the "threshold" for stating an antitrust claim under Section 1 or 2.  *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (citing *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018)).  Accordingly, a plaintiff must plead a plausible relevant market—including "both a geographic market and a product market"—to state a claim under either Section 1 or Section 2.  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1148 (N.D. Cal. 2020) ("[T]he relevant market must still be plausibly alleged to make it past a 12(b)(6) challenge.").  The relevant product market "must encompass the product at issue as well as all economic substitutes for the product," *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008)—that is, all products that are "reasonably interchangeable by consumers for the same purpose," *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  The relevant geographic market must include the "area of

effective competition where buyers can turn for alternate sources of supply." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (quotation marks and ellipsis omitted).

Far from defining the relevant product market for each claim with clarity, Plaintiff vacillates among conflicting allegations—many of them cut-and-pasted from complaints in other App Store cases. *Cf. Sumotext Corp. v. Zoove, Inc.*, No. 16-CV-01370-BLF, 2016 WL 6524409, at *3 (N.D. Cal. Nov. 3, 2016) (dismissing antitrust claims because "the allegations of the relevant market [were] unclear"). For example, Plaintiff conclusorily asserts a single "iOS app and IAP distribution services" market—without explaining what products are included or excluded. FAC ¶¶ 155–56, 166–67. Plaintiff similarly alleges an alternative market for "the U.S. retailing of iOS apps and related digital products" without any elaboration. *Id.* ¶ 155. Elsewhere, Plaintiff advances—also without elaboration—an "IAP processing" market, *id.* at 56; an "iOS App Store" market; *id.* ¶ 192; an "iOS Games Payment Processing Market," *id.* ¶ 223; and a market for "the entire interstate, smartphone enhanced commerce and information flow transacted via the national internet backbone," *id.* ¶ 113. Plaintiff makes no attempt to describe the boundaries of these markets, much less allege facts demonstrating that they are unique, plausible product markets; to the contrary, Plaintiff purports to "reserve[] the right to apply [at least two of these] market definitions interchangeably." *Id.* ¶ 114. Such scattershot pleading—which "puts the onus on the court to 'cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to that claim'"—justifies dismissing Plaintiff's antitrust claims. *Currier v. Town of Gilmanton*, 2019 WL 3779580, at *3 (D.N.H. Aug. 12, 2019) (quoting *Ledford v. Peoples*, 657 F.3d 1222, 1239 (11th Cir. 2011)); *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1331–32 (D. Kan. 2006) (dismissing antitrust complaint for failure to satisfy Rule 8).

In any event, the FAC does not substantiate any allegedly relevant market with sufficient factual allegations. Alleged markets must be defined through allegations concerning reasonable interchangeability of use and cross-elasticity of demand. *Hicks*, 897 F.3d at 1120; *see also hiQ Labs*, 485 F. Supp. 3d at 1147–48. Yet Plaintiff addresses neither. Plaintiff makes no attempt to explain why the products in the "iOS app distribution" market, FAC ¶ 103, the "market/aftermarket for iOS app payment processing," *id.*, or the market for "the entire interstate, smartphone enhanced commerce and

Gibson, Dunn &
Crutcher LLP

information flow transacted via the national internet backbone," *id.* ¶ 113—whatever they are—are economic substitutes, for example.  Indeed, Plaintiff has merely lifted several excerpts from the complaint in *SaurikIT, LLC v. Apple Inc.*, No. 20-cv-08733 (N.D. Cal.), without any allegations explaining their plausibility here.

Nor has Plaintiff "included appropriate allegations demonstrating that there are *not* appropriate economic substitutes."  *Pistacchio v. Apple Inc.*, 2021 WL 949422, at *2 (N.D. Cal. Mar. 11, 2021).  For instance, the alleged "market for smartphone enhanced commerce and information flow transacted via the national internet backbone" on its face includes companies like Google, Samsung, and others, who—like Apple—make smartphones that are used to engage in "enhanced commerce and information flow."  FAC ¶ 178.  But the FAC contains no allegations as to the universe of products within this market that are (or are not) reasonably interchangeable—aside from a graphic suggesting iOS apps *are* interchangeable with those on other platforms.  *See id.* at 9 (listing "Interchangeable Applications" in the alleged "Smartphone Enhanced Internet Information and Commerce Device Marketplace").

Similarly, Plaintiff has not alleged anything about what the "products" are within the "iOS app distribution," "iOS app payment processing," or "IAP distribution services" markets, or why they are not reasonably interchangeable with other products outside of those markets.  This alone is fatal.  *Pistacchio*, 2021 WL 949422, at *2.  Yet it is particularly egregious here as Plaintiff attempts to define multiple single-brand markets—which are "extremely rare," *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008), and treated with extreme skepticism, *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 343 (E.D.N.Y. 2019); *see also Pistacchio*, 2021 WL 949422, at *2 (dismissing similar claims challenging Apple's App Store practices because the plaintiff "has not yet adequately pled that the relevant market should itself be limited to the iOS platform").

For similar reasons, Plaintiff has failed to allege a relevant geographic market.  The FAC vacillates between defining domestic markets, "overseas" or "global" markets, or both.  *See, e.g.*, FAC ¶¶ 103, 115, 119–20.  Yet Plaintiff fails to allege any facts supporting these alleged geographic markets, much less square their contradictory boundaries with one another.

Without plausibly alleged relevant markets, Plaintiff's antitrust claims must be dismissed.  *See, e.g.*, *Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 972 (9th Cir. 2008); *Hicks*, 897 F.3d

Gibson, Dunn &
Crutcher LLP

at 1120; *Pistacchio*, 2021 WL 949422, at *2 (dismissing antitrust claims because the "sparse supporting allegations" failed to substantiate alleged market).

### 2.      Plaintiff Fails to Allege Plausible Antitrust Injury (Counts I–VI)

Antitrust injury is a pleading requirement for Section 1 and 2 claims. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197–98 (9th Cir. 2012).   To allege antitrust injury, a plaintiff must allege injury to "competition in the market as a whole"—such as marketwide reduction in output or increase in prices—"not merely injury to itself as a competitor." *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1024–25 (9th Cir. 2013).   This alleged harm also must be "'attributable to an anticompetitive aspect of the practice under scrutiny'"; "harm that could have occurred under the normal circumstances of free competition" does not suffice. *In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019) (quoting *Atl. Richfield Co. v. USA Petroleum Co*., 495 U.S. 328, 334 (1990)).

The theory of harm pleaded in the FAC is that Plaintiff's app was rejected from the App Store, thereby harming Plaintiff's business. *See, e.g.*, FAC ¶¶ 30, 55–56; *see also id.* ¶ 60 ("Plaintiff has suffered financial losses.").   This theory has no connection to any supposed injury to competition. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) ("The antitrust laws . . . were enacted for the protection of competition not competitors.").   The few disconnected allegations of antitrust injury in the FAC have no relation to *Plaintiff's* theory of harm here. *Compare* FAC ¶¶ 117, 120 (alleging Apple restricts output by barring competing app stores from the App Store); *id.* ¶ 120 (alleging Apple's "distribution charges" are so high that they "keep developers out of the App Store"); *id.* ¶ 172 (alleging 30% commissions are evidence of supracompetitive prices), *with* Ex. D (*Cameron*) ¶¶ 63, 65, 74, 131.   There is no allegation that Plaintiff sought to introduce a competing app store, for example, or that it paid supracompetitive commissions to Apple.   Having failed to allege any antitrust injury it suffered, Plaintiff's Section 1 and 2 claims are fatally defective. *See Anago Inc. v. Tecnol Med. Prods., Inc.*, 792 F. Supp. 514, 519 (N.D. Tex. 1992) (finding that injury "not to [plaintiff] but to third parties" did "not satisfy the narrow 'antitrust injury' definition established in *Cargill* and *Brunswick*").

### 3.      Plaintiff Fails to Allege Exclusionary Conduct (Counts I, II, and IV)

To state a Section 2 claim, a plaintiff must plead willful acquisition or maintenance of monopoly power in a relevant market.  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020).  This requires the plaintiff to allege the willful maintenance of monopoly power "through exclusionary conduct," *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004), "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident," *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

Plaintiff alleges Apple engaged in exclusionary conduct by rejecting Plaintiff's app for distribution on the App Store.  *See, e.g.*, FAC ¶¶ 30, 55–56.  But Apple's alleged conduct is entirely permissible under well-settled Supreme Court precedent and does not support Section 2 claims under any theory (attempt, monopoly, or monopsony).  As the Supreme Court has stated, absent a duty to deal with competitors, a defendant "has no obligation to deal under terms and conditions favorable to its competitors."  *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450–51 (2009).  And because intellectual property carries "the legal right to refuse to license . . . , the existence of a predicate condition to a license agreement cannot state an antitrust violation."  *Townshend v. Rockwell Int'l Corp.*, No. 99 CV 400, 2000 WL 433505, at *8 (N.D. Cal. Mar. 28, 2000).  Even assuming that Apple and Plaintiff compete (despite a lack of plausible allegations to that effect), Apple is under no obligation to deal with Plaintiff on Plaintiff's favored terms.

A recent case illustrates the point.  In *Blix Inc. v. Apple Inc.*, the plaintiff alleged that Apple's removal of the plaintiff's email app from the MacOS App Store for violating Apple's Guidelines was actionable under Section 2 because it "abus[ed] power over key distribution channels."  *See* 2020 WL 7027494, at *1, *8 (D. Del. Nov. 30, 2020).  The court dismissed these claims, concluding that the plaintiff's "abuse of distribution channels" theory would create a "new form of antitrust liability never before recognized by the Supreme Court."  *Id.* at *8 (quotation marks omitted); *cf. Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 623 (S.D.N.Y. 2013) (dismissing claims that Amazon engaged in anticompetitive conduct by not allowing plaintiffs "to sell e-books on Amazon's devices and apps").

Under the principles articulated in *Blix* and similar cases, the Court should reject Plaintiff's theory that it somehow has a "right[]" to have its app distributed on the App Store, and to do so on the terms it prefers, FAC ¶¶ 62, 200.   The Court should likewise reject Plaintiff's theory that it is exclusionary conduct for Apple to require developers to "sign the DPLA and pay Apple $99," *id.* ¶ 144, to license Apple's IP, use its developer tools, or access Apple's customer base, as Apple has no obligation to do otherwise.  *See Pac. Bell Tel. Co.*, 555 U.S. at 450.  Accordingly, all Section 2 claims should be dismissed for failure to plead exclusionary conduct.

### 4.      Plaintiff Fails to Allege Concerted Action or Unlawful Agreement (Count V)

Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits only *concerted action* that restrains trade. *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 190 (2010).  Thus, "the existence of an agreement" is an essential element of any Section 1 claim.  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016); *see also The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) ("Unilateral conduct by a single firm, even if it appears to restrain trade unreasonably, is not unlawful under [S]ection 1." (quotation marks omitted)).  And it is well established that no agreement exists if "[t]here is no 'meeting of the minds'" but rather a unilateral "command[]" that others merely "comply with."  *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 898 (9th Cir. 2008).

For this reason, courts routinely dismiss Section 1 claims that are premised on one party's unilateral creation and announcement of business terms to which another party is required to adhere. *See The Jeanery*, 849 F.2d at 1160 ("This termination was pursuant to James Jeans' announced policy as reiterated in its conversations with its dealers" and therefore "was unilateral, independent action taken by James Jeans . . . , [a]nd it did not violate section 1"); *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1076–77 (S.D. Cal. 2012) (concluding that Facebook's mandatory agreements for app developers were "unilateral action"); *Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 2020 WL 4194962, at *6–7 (S.D.N.Y. July 20, 2020) (concluding that U.S. Soccer's adherence to FIFA policies was "unilateral compliance with FIFA's directive"); *Baar v. Jaguar Land Rover N. Am., LLC*, 295 F. Supp. 3d 460, 465 (D.N.J. 2018) (a "unilaterally implemented [] Policy" imposed by Jaguar Land Rover on "dealers" was not actionable under Section 1).

Plaintiff here challenges only unilateral conduct: Apple's rejection of their apps.  FAC ¶¶ 54–55.  But Apple's Guidelines and other App Store policies are merely the terms on which Apple chooses to do business with developers, as the FAC concedes.  *See, e.g., id.* ¶¶ 72, 74, 126.  Plaintiff's claim fails because it challenges only "unilateral, independent action" not to deal with a supposed competitor. *The Jeanery*, 849 F.2d at 1160; *see also Dennis v. Husqvarna Forest & Garden Co.*, 1994 WL 759187, at *3 (D.N.H. Dec. 27, 1994) (such "independent action" is not actionable because it is the product of a firm's "right to deal, or refuse to deal, with whomever it likes, as long as it does so independently").  Such unilateral conduct is not prohibited by Section 1.

### 5.    Plaintiff Fails to Identify Two Distinct Tied Products (Count VI)

Tying involves the linking of two separate products from two separate markets; its essential characteristic "lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product" that the buyer did not want or would have preferred to purchase elsewhere. *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 21 (1984); *see also Aerotec Int'l*, 836 F.3d at 1178 ("A tie only exists where the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one." (internal quotation marks omitted)).  To state a tying claim, a plaintiff must allege that: (1) the tying and tied products are actually two distinct products; (2) that the defendant "possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product"; and (3) "that the tying arrangement affects a not insubstantial volume of commerce in the tied product market."  *Aerotec Int'l*, 836 F.3d at 1178.

As noted above, Plaintiff lacks standing to bring this claim because the FAC does not allege that Plaintiff participated in the allegedly tied "IAP" market.  *See supra* § IV.A.  The claim also should be dismissed because Plaintiff alleges no facts showing that the two purportedly tied products— "Apple's App Store" and "Apple's In-App Purchase"—are distinct.  FAC ¶ 195; *see Iqbal*, 556 U.S. at 678; *cf. Rick-Mik Enters.*, 532 F.3d at 974 (affirming dismissal of tying claim where allegedly tied market was not "separate and distinct" from the tying product).  A third basis for dismissal is that Plaintiff has not even sufficiently alleged the "most fundamental requirement" of a tying claim: "the existence of a tie."  *Aerotec Int'l*, 836 F.3d at 1178.  To do so, Plaintiff would have to show that the

"sale of the desired ('tying') product [was] conditioned on purchase of another ('tied') product." *Id.* Yet the FAC alleges time and again that Apple allows free apps—that do not use IAP—to be distributed on the App Store. *See, e.g.*, FAC ¶¶ 1, 7, 20, 30. Plaintiff's own allegations thus demonstrate that developers need not use IAP to distribute apps through the App Store. Plaintiff also concedes that there are other ways to monetize apps besides IAP, such as advertising. *See, e.g., id.* ¶ 124. There is simply no tying alleged in Plaintiff's FAC.

**6.      Plaintiff Fails to Allege Inability to Access an Essential Facility (Count III)**

An essential facilities claim is a theory of Section 2 monopolization that similarly challenges a refusal to deal. *See Aerotec Int'l*, 836 F.3d at 1184. The essential facilities doctrine has never been recognized by the Supreme Court, and its viability remains an open question. *See Trinko*, 540 U.S. at 411. To the extent the doctrine is viable, an "indispensable requirement" is "the unavailability of access" to the facility; "where access exists, the doctrine serves no purpose." *Id.* In other words, the doctrine is about facility access; not access "in a way that is conducive to [a competitor's] existing business model." *Aerotec Int'l*, 836 F.3d at 1185.

Plaintiff alleges that Apple monopolizes the so-called market for "smartphone enhanced commerce and information flow transacted via the national internet backbone" through its alleged "unlawful denial" of Plaintiff to "an essential facility—access to iOS device userbase." FAC ¶¶ 178–82. This claim fails at the outset because Plaintiff does not allege that access to the App Store is entirely unavailable to Plaintiff. *See Trinko*, 540 U.S. at 411. It *could* access the App Store if it complied with Apple's policies and requirements and the terms of the DPLA.

Nor does Plaintiff allege, as it must, that it competes in this alleged market. *See Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983 (9th Cir. 1988) (only competitors of the defendant may assert essential facility claims); *Pistacchio*, 2021 WL 949422, at *3 (rejecting similar essential facilities claim where plaintiff did not compete with Apple). Instead, the FAC alleges only that Apple denied Plaintiff's app because it failed to meet Apple's policies and requirements. FAC ¶¶ 54–55.

What is more, as the FAC concedes, the App Store is not the only way to reach the iOS user base. A facility is essential only if the downstream market "is otherwise unavailable." *Aerotec Int'l*,

836 F.3d at 1185.  But as Plaintiff concedes, app users can also be reached, among other channels, through "web browser apps." *Id.* ¶ 68.  The App Store therefore is not "essential."  *Aerotec Int'l*, 836 F.3d at 1185 ("[A] facility is only 'essential' where it is otherwise unavailable."); *Blix Inc.*, 2020 WL 7027494, at *7 (MacOS App Store was not essential facility because plaintiff could distribute on other platforms); *JamSports & Entm't, LLC v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004) (concluding that facility is not essential so "long as there is an alternative (albeit inferior)" facility that plaintiff could access).

The essential facilities claim is further flawed: iOS, as Apple's proprietary operating system protected by patents, trademarks, and copyrights, *cannot be* an essential facility.  As a leading treatise explains, "an intellectual property owner has the right unilaterally to decide not to use or license its intellectual property."  Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.).  Without that right, a firm "might be deterred from investing, innovating, or expanding (or even entering a market in the first place) with the knowledge anything it creates it could be forced to share."  *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013) (Gorsuch, J.).  Accordingly, Plaintiff cannot "just demand the right to piggyback on its larger rival" in court, rather than "investing [or] innovating" itself.  *Id.*  It is Apple's prerogative to decide whether and to what extent to make its operating system available to others, and its decision to restrict access (or to set terms of access) is not a basis for antitrust liability.[2]

## C.   Plaintiff's Contract Claims Must Be Dismissed

### 1.   Plaintiff Fails to Plead Breach of Any Contract (Count VII)

To state a breach of contract claim under California law, *see supra* n.1, a plaintiff must plead: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) breach; and (4) damages. *Hamilton v. Greenwich Invs. XXVI, LLC*, 126 Cal. Rptr. 3d 174, 183 (Cal. Ct. App. 2011).  A plaintiff also "must identify the *specific provision* of the contract allegedly breached." *Donohue v. Apple, Inc.*,

---

[2]  This claim also fails because the only relevant market pleaded as to this claim is not a proper relevant market.  *See supra* § IV.B.1; *see also hiQ Labs*, 485 F. Supp. 3d at 1151 (claim must be dismissed if relevant market not adequately alleged).

Gibson, Dunn &
Crutcher LLP

871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) (emphasis added) (citing *Progressive W. Ins. Co. v. Superior Court*, 37 Cal. Rptr. 3d 434, 449 (Cal. Ct. App. 2005)).  There are no such allegations here.

Rather, Plaintiff alleges that "Apple breached the fundamental intent, and the legal portions" in the Developer Agreement by rejecting an allegedly "legal" and "reasonable" app.  FAC ¶ 235.  But Plaintiff identifies no specific term in which Apple promised that this app would be distributed through the App Store.  Nor could it, since the DPLA places such decisions in Apple's "sole discretion."  Ex. B §§ 3.2(g), 6.9.  As a result, this claim should be dismissed.

### 2.    Plaintiff Fails to Plead Breach of an Implied Covenant (Count VIII)

Plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed.  First, this claim rehashes the breach of contract claim and likewise fails.  *Compare* FAC ¶¶ 235–37, *with id.* ¶¶ 241, 243.  Where allegations "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action . . . no additional claim is actually stated." *Soundgarden v. UMG Recordings, Inc.*, 2020 WL 1815855, at *17 (C.D. Cal. Apr. 6, 2020) (quotation marks omitted).

Second, the "implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Donohue*, 871 F. Supp. 2d at 932 (quotation marks omitted); *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191–92 (N.D. Cal. 2012).  As noted *supra* § IV.C.1, Apple never agreed with Plaintiff that it would be permitted to distribute apps on the App Store.

Third, the FAC alleges that Apple "breached the covenant" when it "banned thousands of developers from competing with popular free or low cost apps."  FAC ¶ 241.  This allegation is divorced from any contract term and fails to show any term that was frustrated; accordingly, the claim must be dismissed.  *See Soundgarden*, 2020 WL 1815855, at *17.[3]

---

[3]   Apple maintains that Plaintiff is bound by the Developer Agreement and DPLA because Plaintiff is in privity with the third-party entity that submitted Plaintiff's app for review.  *See* Mot. to Transfer at 4–6.  If the Court concludes that Plaintiff is not bound by these contracts, then Plaintiff's contract claims must be dismissed.  *See Hamilton*, 126 Cal. Rptr. 3d at 183.  Moreover, if Plaintiff is not contractually bound, then there is a significant question whether Plaintiff is the "real party in interest," as required by Fed. R. Civ. P. 17(a).  *See* ECF No. 15.

**D.      Plaintiff's RICO Claim Must Be Dismissed (Count IX)**

Finally, Plaintiff advances a vague RICO claim, asserting that "individuals within Apple, Apple itself, and/or its counsel" have "engaged in an open-ended pattern of predicate acts over a multi-year timespan." FAC ¶¶ 248–49.  RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c).  To make out a civil RICO claim under section 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quotation marks omitted).  The FAC does not come close to doing so.

**1.      Plaintiff Has Not Pleaded a Claim With Particularity Under Rule 9(b)**

As an initial matter, because Plaintiff's RICO claim sounds in fraud, it is subject to Rule 9(b)'s requirement that the claim be pled with "particularity."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc).  The purpose of Rule 9(b) is to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Gottreich v. S.F. Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977).  To satisfy Rule 9(b), "the pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (citations and internal quotation marks omitted).  In other words, a plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom*, 486 F.3d at 553 (quotation marks omitted).

Plaintiff's threadbare RICO allegations amount to nothing more than vague, conclusory allusions to Apple's alleged practice of "assigning junior App Review members to issue false, pretextual reasons for rejection to small developers." FAC ¶ 250; *see also, e.g.*, *id.* ¶¶ 14, 55, 211.  But this vague statement does not even apply to the app with which Plaintiff was allegedly involved.  As the FAC acknowledges, Apple rejected Plaintiff's app just as it "generally blocked [other] blockchain apps," *id.* ¶ 54, not for any pretextual reason.  While Plaintiff may dispute the wisdom of the alleged policy, it nowhere alleges with specificity that rejection of Plaintiff's app pursuant to the policy was pretextual. *See, e.g.*, *Metro Servs. Grp. v. Travelers Cas. & Sur. Co.*, 2021 WL 2633416, at *7 (N.D.

Gibson, Dunn & Crutcher LLP

Cal. June 25, 2021) (dismissing RICO claim where plaintiff "alleged only conclusory statements" that defendant "used the interstate mails and wires to further its pattern of racketeering . . . including by communicating with Plaintiff"); *Agena v. Cleaver-Brooks, Inc.*, 2019 WL 11248590, at *8 (D. Haw. Oct. 31, 2019) (dismissing RICO claim where plaintiffs failed to identify person who received alleged misrepresentations).

Aside from the insufficient allegations of pretext, the FAC contains a couple other disconnected allegations that could conceivably be construed as attempting to allege fraud. *See, e.g.*, FAC ¶¶ 253–54 ("Primary Productions member 'Andrew' . . . was misled, lied to, and defrauded by the App Review board and Apple management."). But these allegations fare no better under Rule 9(b) because they are equally lacking in specificity as to time, place, and other details. It would be impossible for Apple to prepare an adequate answer to Plaintiff's RICO allegations, and the RICO claim is thus "subject to dismissal based on these deficiencies alone." *Pac. Recovery Sols. v. Cigna Behavioral Health, Inc.*, 2021 WL 1176677, at *10 (N.D. Cal. Mar. 29, 2021).

### 2. Plaintiff Has Failed to Allege That Apple Committed Any Predicate Acts

Plaintiff has not sufficiently alleged that Apple committed a pattern of wire or mail fraud—the alleged predicate racketeering acts. FAC ¶ 250. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Additionally, as the Ninth Circuit recently clarified, to be guilty of mail or wire fraud, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). Plaintiff has not established any of these elements.

Plaintiff's most obvious failure is that none of its allegations "support a reasonable inference that [Apple] acted with specific intent to deceive or defraud." *Pac. Recovery Sols.*, 2021 WL 1176677, at *11. The only goal or intent that Plaintiff (wrongly) attributes to Apple in the entire FAC is to "benefit themselves, their partners and cronies." FAC ¶ 210; *see also, e.g., id.* ¶ 251 (alleging Apple acted to "suit[]" its "own interests"). This is not enough; to prevail on their claims of fraud, even if

Plaintiff *had* identified specific instances of fraud (which it did not), Plaintiff would have to show that Apple acted wrongly not just to benefit itself, but also to "deprive a victim of money or property." *Miller*, 953 F.3d at 1101; *accord Kelly v. United States*, 140 S. Ct. 1565, 1573 n.2 (2020) ("The victim's loss must be an objective of the [deceitful] scheme rather than a byproduct of it." (quoting *United States v. Walters*, 997 F.2d 1219, 1226 (7th Cir. 1993))).  Plaintiff does not contend that Apple intended to deprive it (or anyone else) of money or property, and nothing in the FAC supports such an inference.

For the same reason, Plaintiff has not alleged a scheme to defraud, which is "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017) (quotation marks omitted). Nothing in Plaintiff's allegations suggests that Apple had a scheme to deprive anyone of any money or property.  The only "schemes" mentioned in the RICO count, that Apple allegedly rejected apps for pretextual reasons or suppressed competitors in rankings, are not supported by any facts alleging that Apple did so *to deprive* Plaintiff of money or property.  Likewise, because Plaintiff has failed to allege a scheme, it necessarily has failed to allege the use of the wires or mail to further that scheme, as required for the second element of a fraud claim.

For these reasons, Plaintiff has failed to establish that Apple committed any predicate acts. Moreover, to allege a "pattern of racketeering activity," 18 U.S.C. § 1961(5), Plaintiff had to identify at least two predicate acts within a ten-year period.  Because Plaintiff did not even attempt to describe a single predicate act with any specificity, they have *a priori* failed to allege a pattern of cognizable offenses.  Accordingly, Plaintiff's RICO claim should be dismissed.

### 3. Plaintiff Has Failed to Allege a Distinct Enterprise

To state a claim under section 1962(c), a plaintiff must allege an enterprise that is *separate* from the "person employed by or associated with" that enterprise who engaged in the unlawful RICO conduct.  18 U.S.C. § 1962(c); *see Schreiber Distr. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir. 1986) ("The courts have consistently held that in an action under section 1962(c) the 'person' must be a separate and distinct entity from the 'enterprise.'").  In other words, "[i]f [a corporation] is the enterprise, it cannot also be the RICO defendant." *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984); *see Wagh v. Metris Direct, Inc.*, 2002 WL 257846, at *2 (N.D. Cal. 2002)

1  ("[F]or purposes of a single action, a single corporate defendant cannot be both the RICO person and

2  the RICO enterprise under section 1962(c)." (quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529,

3  1533–34 (9th Cir. 1992))).

4        The only defendant that Plaintiff has named in this case is Apple itself.  To be sure, Plaintiff

5  contends that the RICO "[d]efendants [in this case] include individuals within Apple, Apple itself,

6  and/or its counsel."  FAC ¶ 248.  But the FAC does not name any other alleged RICO participants,

7  meaning Apple must be both the RICO defendant and the enterprise.  The claim should be dismissed.

8  *See*, *e.g.*, *Lopez v. Dean Witter Reynolds, Inc.*, 591 F. Supp. 581, 585–86 (N.D. Cal. 1984) (dismissing

9  RICO claim where "deficient" complaint named only a corporation and did not "also identify a separate

10  entity that is the 'enterprise'").[4]

## V. CONCLUSION

12        For these reasons, all of Plaintiff's claims fail as a matter of law.  Apple respectfully requests

13  that the Court dismiss the FAC with prejudice.

15  Dated:     September 2, 2021         Respectfully submitted,

16                               By:    */s/ Rachel S. Brass*
                                 Rachel S. Brass

18                           GIBSON, DUNN & CRUTCHER LLP

19                           MARK A. PERRY (SBN 212532)
                          mperry@gibsondunn.com

20                           RACHEL S. BRASS (SBN 219301)
                          rbrass@gibsondunn.com

21                           JULIAN W. KLEINBRODT (SBN 302085)
                          jkleinbrodt@gibsondunn.com

22                           555 Mission Street, Suite 3000
                         San Francisco, CA 94105-0921

23                           Telephone:  (415) 393-8200
                         Facsimile:  (415) 374-8429

24                           *Attorneys for Apple Inc.*

---

27  [4]  To the extent Plaintiff implies that Apple's counsel could be a proper RICO defendant, that too is incorrect.  *See Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 699 (7th Cir. 2021) ("A complaint that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation of § 1962(c)."); *Baumer v. Pachl*, 8 F.3d 1341, 1344–45 (9th Cir. 1993).

19